E-FILED
Tuesday, 05 November, 2013  02:32:46 PM
Clerk, U.S. District Court, ILCD

## UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS
## PEORIA DIVISION

| | |
|---|---|
| WINFRED OLIVER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )    No.: 13-1457-JES-JAG |
| | ) |
| | ) |
| RANDY PFISTER, JEFFREY GABOR, | ) |
| DONALD GISH, ANGELICA JOYNER, | ) |
| PATRICK HASTINGS, LIEUTENANT | ) |
| BLACKARD, LIEUTENANT SCROGUM, | ) |
| SHERRY BENTON, SALVADOR A. | ) |
| GODINEZ, and SERGEANT JOHN DOE, | ) |
| | ) |
| Defendants. | ) |

### MERIT REVIEW OPINION

**JAMES E. SHADID, Chief U.S. District Judge:**

This cause is before the Court for a merit review, pursuant to 28 U.S.C. § 1915A, of Plaintiff Winfred Oliver's claims.

### I.
### MERIT REVIEW UNDER 28 U.S.C. § 1915(A)

Under 28 U.S.C. § 1915(e)(2) and § 1915A, the Court is required to carefully screen a complaint filed by a plaintiff who seeks to proceed in forma pauperis. The Court must dismiss a complaint, or a portion thereof, if the plaintiff has raised claims that are legally "frivolous or malicious," that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief. *Id.* The test for determining if an action is frivolous or without merit is whether the plaintiff can make a rational argument on the law or facts in support of the claim. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). A complaint fails to state a claim for relief if the complaint does not allege "enough facts to state a claim to relief that

1

is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009).

In reviewing the complaint, the Court accepts the factual allegations as true and liberally construes them in plaintiff's favor. *Turley v. Rednour*, 729 F.3d 645, 651 (7th Cir. 2013). Conclusory statements and labels are insufficient. Fed. R. Civ. P. 8; *Schatz v. Republican State Leadership Comm.,* 669 F.3d 50, 55 (1st Cir. 2012)(holding that, in order to determine if a complaint states a plausible claim, the court must take non-conclusory, non-speculative facts as true, draw all reasonable inferences in the pleader's favor, and isolate and ignore statements that simply rehash claim elements or offer only legal labels and conclusions). Instead, sufficient facts must be provided to "state a claim for relief that is plausible on its face." *Alexander v. United States*, 721 F.3d 418, 422 (7th Cir. 2013)(internal quotation omitted).

## II.
## ANALYSIS

Oliver alleges three causes of action in his Complaint. His first cause of action is based upon the Fourteenth Amendment's due process clause. Oliver avers that, on April 5, 2011, during a "shakedown" of all of the protective custody units at the Pontiac Correctional Center, correctional officers confiscated certain items from his cell. Specifically, correctional officers confiscated two adult magazines, a brown photo album, and a catalogue sheet of thumb-nailed sized images of nude, adult male models. The officials believed that the catalogue contained images of child pornography because they had been altered by placing children's faces on the adult nude bodies, and therefore, they immediately took Oliver to the North Cell House segregation unit ("NCH").

According to Oliver, Pontiac is divided into three cell houses: East, West, and NCH. Oliver claims that NCH is where IDOC sends the "worst-of-the-worst" in the Illinois penal

system.  In fact, Oliver states that Pontiac uses NCH has a means of controlling inmates housed at Pontiac because no one wants to be housed there.  At NCH, the cells are smaller; one person is housed in each cell; the inmates continuously yell, bang, and scream for hours; inmates flood the galley by clogging the toilets; and inmates fight by hurling human waste at one another.

Oliver alleges that Defendants violated his due process rights in that he had a liberty interest in avoiding placement in NCH.  Oliver also claims that the disciplinary hearing that led to his placement in NCH was so defective that it violated his due process rights.  Oliver alleges that his hearing was constitutionally defective in four ways.  First, Oliver asserts that the hearing officers failed to consider relevant evidence regarding his guilt and that they relied upon an inapplicable statute to find him guilty of possessing child pornography.  Second, Oliver avers that the hearing officers refused to allow him to call a correctional officer either as a live witness at the hearing or by written interrogatories.  Third, Oliver contends that the hearing officers also violated his rights by refusing to allow him to present documentary evidence at the hearing, *i.e.* the items that the correctional officers confiscated from his cell.  Fourth, Oliver states that the hearing officers failed to follow the Illinois Administrative Code in conducting the hearing and reaching its decision.  Oliver alleges that these violations—either individually or collectively—deprived him of his liberty interest protected by the Fourteenth Amendment.

Oliver's second claim focuses upon the conditions of his confinement at NCH.  Although he acknowledges that the officials have tried and cannot totally stop the inmates from throwing containers of feces and urine at one another as a manner of fighting, Oliver states that they have a responsibility to prohibit the constant noise at NCH that results from the inmates' yelling, banging on objects, and kicking the mesh cell doors.  Oliver alleges that the noise is so constant and prevalent that it prohibited him from sleeping, from his working on his legal correspondence,

and from performing other tasks such as reading. Oliver also claims that, after the inmates would flood the galley, the water would back up into his cell but that the officers would not help mop or clean the unsanitary water in his cell. In fact, Oliver avers that, when the officers would clean the galley, they would often times push the water back into his cell. Oliver claims that the conditions of his confinement in NCH were constitutionally defective and constituted cruel and unusual punishment in violation of his Eighth Amendment rights.

For his third cause of action, Oliver contends that the correctional officers and prison officials violated his Equal Protection rights protected by the Fourteenth Amendment in that the officers wrote noise disciplinary tickets to inmates housed in the East and West cell houses at Pontiac but not to inmates housed in NCH. According to Oliver, officers did not believe that issuing a disciplinary ticket to an inmate housed at NCH would have any effect, and therefore, they did not issue such tickets. Oliver claims that the refusal to issue such noise tickets violated his Equal Protection rights.

### A.    DUE PROCESS

"When a plaintiff brings an action under § 1983 for procedural due process violations, he must show that the state deprived him of a constitutionally protected interest in 'life, liberty, or property' without due process of law." *Williams v. Ramos*, 71 F.3d 1246, 1248 (7th Cir. 1995) (quoting *Zinermon v. Burch*, 494 U.S. 113, 125 (1990)); *Kentucky Dept. of Corrections v. Thompson*, 490 U.S. 454, 459-60 (1989). "Decisions and actions by prison authorities which do not deprive an inmate of a protected liberty interest may be made for any reason or for no reason." *Richardson v. Brown*, 2013 WL 5093801, * 5 (S.D. Ind. Sept. 11, 2013)(citing *Montgomery v. Anderson*, 262 F.3d 641, 644 (7th Cir. 2001)).

Oliver is incorrect that he has a liberty interest in staying out of NCH.  On the contrary, an inmate has "no liberty interest in remaining in the general prison population." *Williams*, 71 F.3d at 1248.  "In fact, absent a constitutional, statutory, or regulatory bar, 'a prisoner may be transferred for any reason, or for no reason at all.'" *Id*. at 1249 (quoting *Williams v. Faulkner*, 837 F.2d 304, 309 (7th Cir. 1988)).  "An inmate has a due process liberty interest in being in the general prison population only if the conditions of his or her confinement impose 'atypical and significant hardship . . . in relation to the ordinary incidents of prison life.'" *Richardson*, 2013 WL 5093801, at * 5 (quoting *Sandin v. Conner*, 515 U.S. 472, 484 (1995)).  In the Seventh Circuit, "a prisoner in disciplinary segregation at a state prison has a liberty interest in remaining in the general prison population only if the conditions under which he or she is confined are substantially more restrictive than administrative segregation at the most secure prison in that state." *Id*.  "Merely being placed in a disciplinary unit, or being confined under conditions more onerous than conditions in other housing units of the jail does not violate the guarantee of due process." *Id*.

In the instant case, Oliver complains more about the procedures that led to his one-year placement in NCH than he does about being placed in NCH itself.  To the extent that he is challenging the procedure that he received that led to his segregation, Oliver has failed to state a claim upon which relief can be granted.  Although Oliver possessed a right to call witnesses at his discipline hearing, "there is no right to call a witness whose testimony would be irrelevant, repetitive, or unnecessary." *Piggie v. Cotton*, 344 F.3d 647, 677 (7th Cir. 2003).  Indeed, "[a] violation of the right to call witnesses will be considered harmless unless there is evidence that the testimony could have aided the prisoner's defense." *Wilson v. McBride*, 2004 WL 635222, * 2 (7th Cir. Mar. 26, 2004).  Oliver has failed to allege how Defendant Gabor's testimony would

have been relevant or how it would have aided his defense. The Court has reviewed the interrogatories provided by Oliver that he wanted Defendant Gabor to answer, but it can divine no possibility that Gabor's responses thereto would have assisted Oliver in his defense.

Nor is the Court persuaded that the disciplinary officers' failure to produce the documentary evidence or to follow what Oliver believes to be the "relevant" evidence constituted a constitutional violation. The United States Supreme Court held in *Wolff v. McDonnell*, 418 U.S. 539 (1974), that due process in a prison disciplinary hearing requires four procedures: advance written notice of the charges; (2) an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and present evidence; (3) a written statement by the fact finder of the evidence relied upon and the reasons for the decision; and (4) some evidence to support the decision. *Id*. at 571.

Oliver received all four of these procedural requirements. Although Oliver takes issue with the hearing officer's findings, the standard of review is quite low; only "some evidence in the record" is necessary to support the finding of guilt. *Superintendent, Massachusetts Correctional Inst. v. Hill*, 472 U.S. 445, 455 (1985). Based upon Oliver's own allegations and the documents attached to his Complaint, some evidence was in the record before the hearing officers with which to find Oliver guilty. *Dowell v. Cate*, 1992 WL 386850, * 2 (7th Cir. Dec. 29, 1992)("it is not the function of this court to reweigh the evidence considered by a hearing officer or adjustment committee."). Thus, to the extent that Oliver seeks to state a due process claim based upon the lack of or improper procedures that he received at his disciplinary hearing, the Court finds that Oliver fails to state a claim and that he cannot proceed on that basis in this case.

Oliver may, however, maintain a claim based upon the deprivation of his liberty interest in being placed in NCH. The Seventh Circuit has described an inmate's liberty interest in

avoiding disciplinary segregation as very limited or even nonexistent. *Townsend v. Fuchs*, 522 F.3d 765, 766 (7th Cir. 2008).   More recently, however, the Seventh Circuit has described a deprivation of liberty interest for being placed into disciplinary segregation for an extended period of time as requiring a factual inquiry that cannot be resolved at the pleading stage. *Marion v. Columbia Correctional Inst.*, 559 F.3d 693, 698-99 (7th Cir. 2009)(citing cases).   Thus, a factual record must be established before the Court can consider whether the conditions of Oliver's confinement were so atypical as to constitute a violation of his liberty interest, and Oliver's Complaint may proceed on that basis.

### B.     CONDITIONS OF CONFINEMENT

Likewise, the Court finds that Oliver has stated a cause of action upon which relief can be granted for excessive noise in violation of his Eighth Amendment right.   "The Constitution does not require prison officials to provide the equivalent of hotel accommodations or even comfortable prisons." *Lunsford v. Bennett,* 17 F.3d 1574, 1581 (7th Cir. 1994); *Harris v. Fleming,* 839 F.2d 1232, 1235 (7th Cir. 1988)("Inmates cannot expect the amenities, conveniences and services of a good hotel.").

Nevertheless, allegations of excessive noise in a prison can support a valid Eighth Amendment claim. *E.g. Kost v. Kozakiewicz,* 1 F.3d 176, 180 (3d Cir. 1993)(section 1983 challenge to conditions of confinement, including allegations of unbearable noise pollution causing inmate**s** to suffer degenerative hearing, should not have been dismissed on ground that issues were addressed in context of previous class action suit); *Inmates of Occoquan v. Barry*, 844 F.2d 828, 848 (D.C. Cir. 1988)(excessive noise caused by unregulated television volume settings constituted constitutional violation only in combination with numerous other systemic deficiencies; proper to base holding on testimony that it was "necessary to almost shout to be

7

heard"); *Williams v. Boles*, 841 F.2d 181, 183 (7th Cir. 1988)(incessant noise may cause agony even though it leaves no physical marks); *Toussaint v. McCarthy*, 801 F.2d 1080, 1110 (9th Cir. 1986)(affirming scope of relief granted by district court for noise level in the prison; evidence showed that there was a "constant level of noise" which adversely affected the inmates' hearing).

Oliver alleges that the noise at NCH was constant and caused (perhaps) physical and (certainly) emotional damage.  The noise prohibited him from properly sleeping for a year, prohibited him from engaging in daily activities, and constituted cruel and unusual punishment. Oliver's allegations are sufficient to state an Eighth Amendment claim for excessive noise. *Antonelli v. Sheahan*, 81 F.3d 1422, 1433 (7th Cir. 1996)(finding that a prisoner had stated a cause of action based upon his allegation that the noise occurred every night, often all night, interrupting or preventing his sleep).

Oliver has not, on the other hand, stated a claim based upon the flooding of the galley by other inmates.  The United States Supreme Court has made clear that "[t]he Eighth Amendment does not outlaw cruel and unusual 'conditions;' it outlaws cruel and unusual 'punishments.'" *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).  This means that "an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot . . . be condemned as an infliction of punishment." *Id*. at 838.  Accordingly, "a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id*. at 837.  This type of deliberate indifference "implies at a minimum actual knowledge of impending harm easily preventable, so that a conscious, culpable refusal to prevent the harm can be inferred

from the defendant's failure to prevent it." *Duckworth v. Frazen*, 780 F.2d 645, 653 (7th Cir. 1985).  "[M]ere negligence or even gross negligence does not constitute deliberate indifference," *Snipes v. DeTella*, 95 F.3d 586, 590 (7th Cir. 1996), and it is not enough to show that a prison official merely failed to act reasonably. *Gibbs v. Franklin*, 49 F.3d 1206, 1208 (7th Cir. 1995), *abrogated on other grounds, Haley v. Gross*, 86 F.3d 630, 641 (7th Cir. 1996).

Oliver has not alleged any deprivation of his basic needs or refusal to provide sanitation items necessary to clean his cell after an inmate flooding.  Based upon his allegations, Oliver's complaint is not that he cannot clean his cell after a flood; he simply wants a correctional officer to do it instead.  The Constitution does not require this action, and the Court is prohibited to get involved in the day-to-day operation of a prison. *Lynch v. Aramark Correctional Servs., LLC*, 2013 W: 5348477, * 1 (N.D. Ind. Sept. 24, 2013)(citing *Bell v. Wolfish*, 441 U.S. 520, 547 (1979)("the court must afford prison officials "wide-ranging deference" in the day-to-day operations of a prison, particularly with regard to policies intended to preserve internal order and maintain institutional security.").

## C.   EQUAL PROTECTION

Oliver has also not stated a cause of action for deprivation of his Equal Protection rights. A "prison administrative decision may give rise to an equal protection claim only if the plaintiff can establish that state officials had purposefully and intentionally discriminated against him." *Meriwether v. Faulkner*, 821 F.2d 408, 415 n. 2 (7th Cir. 1987).  "The gravamen of equal protection lies not in the fact of deprivation of a right but in the invidious classification of persons aggrieved by the state's action.  A plaintiff must demonstrate intentional or purposeful discrimination to show an equal protection violation.  Discriminatory purpose, however, implies more than intent as volition or intent as awareness of consequences.  It implies that a

9

decisionmaker singled out a particular group for disparate treatment and selected his course of action at least in part for the purpose of causing its adverse effects on the identifiable group." *Nabozny v. Podlesny*, 92 F.3d 446, 453-54 (7th Cir. 1996)(internal quotation omitted).

In the instant case, Oliver has not alleged any discriminatory purpose by prison officials in refusing to issue disciplinary tickets to inmates housed in NCH. Moreover, he has not alleged that prison officials failed to issue disciplinary noise tickets to NCH inmates for the purpose of causing adverse effects upon them. In any event, requiring prison officials to issue disciplinary tickets (*i.e.*, the relief sought by Oliver) is not the type of endeavor in which federal courts should undertake. *Foster v. Cooper*, 1994 WL 110180, * 9 (N.D. Ill. Mar. 28, 1994).

### III.
### MOTIONS

Finally, Oliver has filed three motions that need the Court's attention.

### A.      CLASS ACTION

In the first motion, Oliver moves the Court to allow this case to proceed as a class action. The Federal Rules of Civil Procedure provide courts with broad discretion to determine whether to certify a class pursuant to Rule 23. In order to maintain a class action under Rule 23, a would-be class must first meet "the prerequisites of numerosity, commonality, typicality, and adequacy of representation . . . ." *General Telephone Co. of the Southwest v. Falcon,* 457 U.S. 147, 156 (1982).[1] "All of these elements are prerequisites to certification; failure to meet any one of them precludes certification as a class." *Retired Chicago Police Ass'n v. City of Chicago,* 7 F.3d 584,

---

[1] Rule 23(a) provides: "(a) Prerequisites to a Class Action. One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class. Once the litigant meets the four conjunctive requirements of 23(a), a class action must also qualify under one of the three subsections of 23(b)." *Id.*

596 (7th Cir. 1993). "[T]he party seeking class certification assumes the burden of demonstrating that certification is appropriate." *Id.*

When determining whether to certify a class, a court is prohibited from considering the merits of the underlying claim. *Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 177 (1974). Nevertheless, "the class determination generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action," accordingly, "sometimes it may be necessary for the court to probe behind the pleadings before coming to rest on the certification question." *Falcon,* 457 U.S. at 160.

### 1.      Plaintiff's proposed class does not satisfy Rule 23(a)'s requirements.

"Under Rule 23(a)(4), the adequacy of representation requirement mandates that both the class representative and counsel for the named plaintiff zealously represent and advocate on behalf of the class as a whole." *Bonner v. Team Toyota, LLC*, 2006 WL 3392942, * 4 (Nov. 21, 2006). "A class is not fairly and adequately represented if class members have antagonistic or conflicting claims." *Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992). "As the class representative, a plaintiff must not have 'antagonistic or conflicting claims with other members of the class,' and must have 'sufficient interest in the outcome of the case to ensure vigorous advocacy." *Bonner*, 2006 WL 3392942, at * 4 (quoting *Sebo v. Rubenstein*, 188 F.R.D. 310, 316 (N.D. Ill. 1999)).

In the instant case, Oliver cannot adequately represent the proposed class, at least not in an attempt to obtain injunctive relief. Oliver asks this Court to enjoin Defendants by compelling them to issue noise tickets to the inmates in NCH in the same manner and numbers as they issue to the inmates housed in the East and West Cell Houses. However, Oliver is no longer housed in NCH. As a result, Oliver does not have a sufficient interest in obtaining an injunction that

affects the conditions at NCH, and therefore, his motion for class certification for injunctive purposes is denied. *Arreola v. Godinez*, 546 F.3d 788, 799 (7th Cir. 2008)(holding that an inmate who sought class certification based upon a jail's refusal to allow crutches in the jail failed to establish adequacy of representation because he was no longer at the jail and the likelihood that he will return and will again need crutches is too speculative to support an injunction).

> **2.    Plaintiffs' proposed class fails to satisfy Rule 23(b)'s requirements.**

Although this matter cannot proceed as a class action in order to obtain injunctive relief, the Court needs to determine whether it can proceed as a class action in order to obtain compensatory or other monetary relief.  For purposes of compensatory damages, the Court will assume, without deciding, that Oliver can establish each of the four elements under Rule 23(a) necessary to maintain a class action.

Once Rule 23(a)'s prerequisites are met, the potential class must satisfy at least one of Rule 23(b)'s provisions. *Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992).  As discussed above, Oliver cannot maintain this case as a class action in order to obtain injunctive relief, and thus, he cannot obtain class certification under Rule 23(b)(2).

But, neither is class certification available under Rule 23(b)(1) or (3).  "Rule 23(b)(1)(B) permits class certification if separate actions by class members would, as a practical matter, be dispositive of the interest of nonparty class members or substantially impair or impeded their ability to protect their interest." *Pennsylvania Chiropractic Ass'n v. Blue Cross Blue Shield Ass'n*, 286 F.R.D. 355, 363 (N.D. Ill. 2012).  "Situations in which class certification is common under Rule 23(b)(1)(B) is where there is a common fund that may limit recovery to individualized plaintiffs." *Estate of VanDam ex rel. Horizon Trust & Investment Mgmt. v. Daniels*, 278 F.R.D. 415, 425 (S.D. Ind. 2011).  Indeed, "[t]he Seventh Circuit has made clear

that Rule 23(b)(1) . . . is inappropriate in damage actions not involving a limited fund." *Hawkins v. Securitas Sec. Services USA, Inc.*, 280 F.R.D. 388, 396 (N.D. Ill. 2011)(citing *Crawford v. Equifax Payment Servs., Inc.*, 201 F.3d 877, 882 (7th Cir. 2000).

Here, there is no common fund that may limit recovery. Accordingly, Rule 23 (b)(1) is inapposite.

Rule 23(b)(3) permits class certification when "question of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." *Id.* The Court finds that a class action is not superior to other methods for adjudicating this controversy.

Initially, the Court notes that Oliver's proposed class would encompass proposed class members whose claims have been barred by the applicable two-year statute of limitations. Furthermore, in determining whether a class action is a superior means of adjudicating a case, a court should consider the interest of the individual members in individually controlling the litigation, the desirability of concentrating the litigation in the particular forum, and the manageability of the class action. *Demitropoulos v. Bank One Milwaukee*, 915 F. Supp. 1399, 1419 (N.D. Ill. 1996). Oliver admits that the identity of the inmates who have been in and out of NCH and the duration of the stay is "fluid," and Rule 23(b)(3) requires notice be given and an option to opt-out be provided to potential class members. Given these difficulties in managing a class action, the Court finds that Oliver's motion to certify this matter as a class action for purposes of damages is denied. *Taylor v. CSX Transp., Inc.*, 264 F.R.D. 281, 296 (N.D. Ohio 2007)(denying class certification because class action difficult to manage claims presented).

13

**B.     APPOINTMENT OF COUNSEL**

Oliver has also asked the Court to appoint counsel to represent him and the proposed class, but his motion for appointment of counsel is denied.  The Court does not possess the authority to require an attorney to accept *pro bono* appointments on civil cases such as this. *Pruitt v. Mote*, 503 F.3d 647, 653 (7th Cir. 2007).  The most that the Court can do is to ask for volunteer counsel. *Jackson v. County of McLean*, 953 F.2d 1070, 1071 (7th Cir. 1992) (holding that it is a "fundamental premise that indigent civil litigants have no constitutional or statutory right to be represented by counsel in federal court.").  In determining whether the Court should attempt to find an attorney to voluntarily take a case, "the question is whether the difficulty of the case—factually and legally—exceeds the particular plaintiff's capacity as a layperson to coherently present it to the judge or jury himself. . . .  The question is whether the plaintiff appears competent to *litigate* his own claims, given their degree of difficulty, and this includes the tasks that normally attend litigation: evidence gathering, preparing and responding to motions and other court filings, and trial." *Pruitt*, 503 F.3d at 655 (emphasis in original).  In other words, this inquiry is an individualized one based upon the record as a whole, the nature of the claims, and the plaintiff's ability to pursue his claims through all phases of the case, including discovery and trial. *Navejar v. Iyioloa*, 718 F.3d 692, 696 (7th Cir. 2013).

Here, Oliver appears to be literate and has filed cogent pleadings with the Court.  Indeed, Oliver's Complaint is quite detailed, and he has litigated other cases in federal courts.  Oliver's argument that he needs counsel to litigate this matter as a class action is a non-starter because the Court has denied his motion to proceed as a class action, and his excessive noise claim is not so novel or complex that he cannot litigate it himself.  He has personal knowledge of the facts supporting his claims and appears cable of cross-examining Defendants regarding their version

of the events. *Johnson v.* Doughty, 433 F.3d 1001, 1006 (7th Cir. 2006).  Accordingly, the Court finds that, based upon the current record, Oliver appears competent to litigate this case himself and denies his motion for appointment of counsel.

### C.    SUPPLEMENT THE COMPLAINT

Finally, the Court denies Oliver's motion for leave to supplement his Complaint. Initially, the Court notes that it does not allow litigants to make piecemeal amendments to pleadings.  In any event, Federal Rule of Civil Procedure 8 requires a plaintiff to provide a short, plain statement of the claim showing that he is entitled to relief. *Id.*  Moreover, courts are to construe pro se complaints liberally. *Alam v. Miller Brewing Co.*, 709 F.3d 662, 669 (7th Cir. 2013).  The amendments that Oliver wants to make to his Complaint are unnecessary at this point in the litigation.  Accordingly, his motion to supplement is denied.

**IT IS, THEREFORE, ORDERED that:**

1.    Pursuant to its merit review of the Complaint under 28 U.S.C. § 1915A, the Court finds that Plaintiff's Complaint states a claim against Defendants Pfister, Gabor, Gish, Joyner, Hastings, Benton, and Godinez for violating his liberty interest protected by the Fourteenth Amendment by placing him in disciplinary segregation for a year's time and a claim against Defendant Pfister for excessive noise in violation of his Eighth Amendment rights.  Any additional claim(s) shall not be included in the case except at the Court's discretion on a motion by a party for good cause shown or pursuant to Federal Rule of Civil Procedure 15.

2.    Plaintiff's Equal Protection claim is dismissed.

3.    Defendants Blackard, Gabor, Scrogum, and Doe are dismissed as party Defendants as they are not alleged by Plaintiff to have been involved in the decision to place him in disciplinary segregation or have any control over the excessive noise at NCH.

4.      This case is now in the process of service.  Plaintiff is advised to wait until counsel has appeared for Defendants before filing any motions in order to give Defendants notice and an opportunity to respond to those motions.  Motions filed before Defendants' counsel has filed an appearance will generally be denied as premature.  Plaintiff need not submit any evidence to the Court at this time unless otherwise directed by the Court.

5.      The Court will attempt service on Defendants by mailing him a waiver of service.  Defendants have 60 days from service to file an Answer.  If Defendants have not filed an Answer or appeared through counsel within 90 days of the entry of this order, Plaintiff may file a motion requesting the status of service.  After Defendants have been served, the Court will enter an order setting discovery and dispositive motion deadlines.

6.      With respect to a Defendant(s) who no longer works at the address provided by Plaintiff, the entity for whom that Defendant(s) worked while at that address shall provide to the Clerk said Defendant's current work address, or, if not known, said Defendant's forwarding address.  This information shall be used only for effectuating service.  Documentation of forwarding addresses shall be retained only by the Clerk and shall not be maintained in the public docket nor disclosed by the Clerk.

7.      Defendants shall file an answer within 60 days of the date the waiver is sent by the clerk.  A motion to dismiss is not an answer.  The answer should include all defenses appropriate under the Federal Rules.  The answer and subsequent pleadings shall be to the issues and claims stated in this Order.  In general, an answer sets forth Defendants' positions.  The Court does not rule on the merits of those positions unless and until a motion is filed by Defendants.  Therefore, no response to the answer is necessary or will be considered.

8.      Once counsel has appeared for Defendants, Plaintiff need not send copies of his filings to that Defendant or to that Defendants' counsel.  Instead, the Clerk will file Plaintiff's document electronically and send a notice of electronic filing to defense counsel.  The notice of electronic filing shall constitute service on Defendants pursuant to Local Rule 5.3.  If electronic service on Defendants is not available, Plaintiff will be notified and instructed accordingly.

9.      Counsel for Defendants is hereby granted leave to depose Plaintiff at his place of confinement.  Counsel for Defendants shall arrange the time for the deposition.

10.     Plaintiff shall immediately notify the Court, in writing, of any change in his mailing address and telephone number.  Plaintiff's failure to notify the Court of a change in mailing address or phone number will result in dismissal of this lawsuit, with prejudice.

**IT IS FURTHER ORDERED THAT THE CLERK IS DIRECTED TO**:  **1) ATTEMPT SERVICE ON DEFENDANTS PURSUANT TO THE STANDARD PROCEDURES; 2) SET AN INTERNAL COURT DEADLINE 60 DAYS FROM THE ENTRY OF THIS ORDER FOR THE COURT TO CHECK ON THE STATUS OF SERVICE AND ENTER SCHEDULING DEADLINES; 3) DISMISS PLAINTIFF'S EQUAL PROTECTION CLAIM; 4) DISMISS DEFENDANTS BLACKARD, GABOR, SCROGUM, AND JOHN DOE AS PARTY DEFENDANTS; AND 5) SHOW PLAINTIFF'S MOTION FOR CLASS CERTIFICATION AND APPOINTMENT OF COUNSEL [D/E 4] AND MOTION FOR LEAVE TO SUPPLEMENT PLEADINGS [D/E 5] AS DENIED.**

**LASTLY, IT IS ORDERED THAT IF A DEFENDANT FAILS TO SIGN AND RETURN A WAIVER OF SERVICE TO THE CLERK WITHIN 30 DAYS AFTER THE WAIVER IS SENT, THE COURT WILL TAKE APPROPRIATE STEPS TO EFFECT**

**FORMAL SERVICE THROUGH THE U.S. MARHSAL'S SERVICE ON THAT DEFENDANT AND WILL REQUIRE THAT DEFENDANT TO PAY THE FULL COSTS OF FORMAL SERVICE PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 4(d)(2).**

Entered this 5th day of November 2013.

_____/s James E. Shadid_____
JAMES E. SHADID
CHIEF UNITED STATES DISTRICT JUDGE